**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| Jeremy D. Orchin, Trustee of the Eugene C. Gadaire Insurance Trust | ) ) ) | |
| Plaintiff | ) ) | |
| v. | ) ) | Case No. 1:12-cv-1743-BAH |
| Great-West Life & Annuity Insurance Company | ) ) | |
| Defendant | ) ) | |
| ———————————————— | ) ) | |
| Elizabeth Gadaire | ) ) | |
| Plaintiff | ) ) | |
| v. | ) ) | Case No. 1:13-cv-00055 (consolidated with above) |
| Jeremy D. Orchin, et al. | ) ) | |
| Defendants, et al | ) ) | |
| ———————————————— | ) | |

**DEFENDANT JEREMY ORCHIN'S OPPOSITION TO PLAINTIFF ELIZABETH
GADAIRE'S MOTION FOR SUMMARY JUDGMENT**

Defendant, Jeremy Orchin ("Dr. Orchin") submits this Memorandum of Law in

Opposition to Plaintiff Elizabeth Gadaire's ("Plaintiff") Motion for Summary Judgment.

**I.     INTRODUCTION**

On October 26, 2012, Dr. Orchin, on behalf of The Eugene C. Gadaire Trust (the

"Trust"), filed suit against Defendant Great-West Life & Annuity Insurance Company ("Great-

West") for, *inter alia,* its failure to provide required life insurance policy cancellation notices,

failure to provide the life insurance policy's death benefit, and breach of an assignment

agreement. Compl. October 26, 2012, ECF No. 1. Defendant filed an Answer admitting that it

did not send notice to the insured and had failed to pay the policy death benefit, but denied the

1

existence of a contractual assignment agreement. Def. Answer to Compl. November 16, 2012, ECF No. 5. On or about January14, 2013, Plaintiff Elizabeth Gadaire, the sole beneficiary under the Trust, filed a Complaint against both Great-West and Dr. Orchin. Pl's Verified Compl. January 14, 2013, ECF No. 1.  The matters were consolidated into the current proceedings and have progressed through discovery and now have culminated in the filing of several cross Summary Judgment motions. Dr. Orchin now opposes Plaintiff's Summary Judgment Motion.

## II.    STATEMENT OF FACTS

In an effort to promote clarity and satisfy his burden of stating the material facts in dispute, Dr. Orchin herein incorporates by reference his the Statement of Facts[1] from his Motion for Summary Judgment against Great West. *See generally* Mem. in Supp. of Cross-Claimant Jeremy Orchin's Mot. for Summ. J., May 9, 2014, ECF. No. 30. Defendant further avers certain undisputed material facts applicable to the instant motion:

1. The Trust's checking account did not maintain and did not actually have sufficient funds to pay the required insurance premiums on or about July 2009. *See* Exhibit ("Ex.") 1, Declaration of Jeremy Orchin, July 15, 2014, at ¶1.

2. Plaintiff did not maintain any calendar system or other method for notifying her that to provide the Trust's checking account with sufficient funds to pay the required insurance premiums.  Ex. 2, Transcript of September 11, 2013 Deposition of Elizabeth Gadaire, at 8:15-22–9:1-3.

3. Plaintiff was aware that the insurance premiums were due semi-annual at the same designated dates.  *Id.*

---

[1] Section II of the Memorandum of Law in Support of Cross-Claimant Jeremy Orchin's Motion for Summary Judgment.

### III.    STATEMENT OF DISPUTED FACTS

In response to Plaintiff's stated facts as well as certain omitted facts, the following material facts are in dispute between the parties:

1) Due to the insufficient funds in the checking account there was no duty or obligation for Dr. Orchin to make the subject life insurance premium payments. *See* Ex. 3, Trust Agreement, at 4(c); Ex. 1, at ¶1.

2) Dr. Orchin at all times acted with ordinary diligence and good faith in his role as Trustee of the Eugene Gadaire Insurance Trust.  *Id.* at ¶4.

3) Any alleged breach of duty by Dr. Orchin was not the proximate cause of the damages claimed by Plaintiff.  *See* Ex. 4, Expert Report of Nicholas D. Ward, at p. 1.

4) Plaintiff failed to exercise reasonable care in timely providing the requisite funds, ensuring sufficient safeguards were in place to provide the requisite funds, ensuring the Trust checking account maintained a sufficient balance to satisfy the premium payments, and ensuring her residence was receiving premium notices.  Each of these acts individually and collectively acted as a substantial factor in causing her alleged damage and/or injury. *See* Ex. 1, at ¶1-2; *see also* Ex. 2, at 8:15-22–9:1-3; Ex. 4, at p. 5.

5) Plaintiff assumed the risk of the alleged injury and/or damage by failing to institute a monitoring system for the premium payments, failing to ensure that Great-West would send premium payment notices to her residence, and/or failing to provide funds for any required premium payments. *Id*; *see also* Ex. 2, at 8:15-22–9:1-3; Ex. 4, at p. 5.

### IV.    STANDARD OF REVIEW

A court must deny an award of summary judgment unless the moving party can demonstrate there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *see*

*also In re Apex Express Corp.,* 190 F.3d 624, 633 (4th Cir.1999).   Further, "[i]n evaluating a

summary judgment motion, a court must consider whether a reasonable jury could find in favor

of the non-moving party, taking all inferences to be drawn from the underlying facts in the light

most favorable to the non-movant." *In re Apex Express Corp.,* 190 F.3d 624, 633 (4th Cir.1999).

The Supreme Court has stated that it is improper for a court to weigh the evidence or

make any determinations as to its credibility. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986) ("[c]redibility determinations, the weighing

of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not

those of a judge"). Accordingly, "the facts must be viewed as plaintiffs have presented them."

*Pace v. McGrath,* 378 F. Supp. 140, 144 (D. Md. 1974); *see also* 10A Wright, Miller &

Kane, *Federal Practice and Procedure* §2927 ("facts asserted by the party opposing the motion,

if supported by affidavits or other evidentiary material, are regarded as true.").Thus, if the

moving party cannot demonstrate the absence of any genuine issue of material fact, summary

judgment must be denied.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

## V.    ARGUMENT

### A.  The Trust's Exculpatory Language Precludes a Claim for Negligence and Breach of Fiduciary Duty.

As stated by Plaintiff, to recover under a claim of ordinary negligence, a plaintiff must prove

"a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, and

damage to the interests of the plaintiff, proximately caused by the breach." *D.C. v. Harris*, 770

A.2d 82, 87 (D.C. 2001) (internal quotation marks omitted). Whereas, in a claim for breach of

fiduciary duty the plaintiff must establish (1) the defendant owed plaintiff fiduciary duties; (2)

the defendant breached the duties; and (3) the breach was a proximate cause of an injury to

plaintiff.  *See Armenian Genocide Museum & Mem'l, Inc. v. Cafesjian Family Found., Inc.,* 595

F. Supp. 2d 110, 116 (D.D.C. 2009).  Additionally, of particular relevance here, the Trust

agreement ("Trust Agreement") states:

> [i]f at any time the principal[2] of the trust estate… shall ***be insufficient to pay such premiums*** and other charges, the Trustee ***shall be under no obligation to make such payments and shall not be liable to any extent whatsoever for such nonpayment.***[3]

Ex. 3, at 4(c) (emphasis added).  Where exculpatory language, such as this, exists, D.C. courts

apply the plain language of the provisions.  *See Moore v. Waller*, 930 A.2d 176, 179 (D.C. 2007)

(enforcing exculpatory language). Moreover, the exculpatory language need not specifically

include the claims covered "so long as it conveys the concept specifically and explicitly through

other language." *Id.* at 181 ("an exculpatory clause need not include the word 'negligence'…");

*see also In re Lucas*, 312 B.R. 559, 566 (Bankr. D. Md. 2004); (stating if language is broad

enough exculpatory clauses need not "contain or use the word "negligence" or any other "magic

words."); Unif. Trust Code §1008 (2010) (allowing exculpatory provisions so long as the

provision does not exculpate trustee's bad faith, recklessness or abuse of his fiduciary

relationship with the settlor).  Accordingly, often a threshold determination must be made to

determine whether the clause "shields" the party relying on the clause from liability.  *See In re*

*Lucas*, 312 B.R. 559, 565 (Bankr. D. Md. 2004).  Lastly, the only public policy restriction D.C.,

and many other jurisdictions, have placed on the application of exculpatory provision occurs

---

[2] While not at issue in the present case, this provision of the Trust specifically disallows the trustee from utilizing any insurance policy that composes the principal of the Trust, presumably to the extent it has a cash value, to pay the Trust's outstanding obligations. *See* Ex. 3, at 4(c). (…excluding [] insurance policies…").

[3] Exculpatory provision such as this are often used when the Trustee is not a professional fiduciary as a way to induce the potential trustee by reducing or eliminating areas that could lead to trustee liability. Louise Lark Hill, Fiduciary Duties and Exculpatory Clauses: Clash of the Titans or Cozy Bedfellows?, 45 U. Mich. J.L. Reform 829, 833 (2012) ("For the ***amateur trustee, exculpatory clauses*** were ***used to protect*** the ***named friend or family*** member."(emphasis added)) Dr. Orchin was an amateur trustee, a dentist by trade, and only agreed to serve as the trustee because he was "best friends" with the Gadaires and would not have served if the exculpatory provisions were not included in the Trust Agreement. *See also* Ex. 1, at ¶5; *see also* Ex. 5, Transcript of September 11, 2013, Deposition of Jeremy Orchin, at 10:4-22-11:1-4; Ex. 2, at 5:11-22-6:1-13.

when the otherwise exculpated party acted intentionally or in a grossly negligent manner. *See Carleton v. Winter*, 901 A.2d 174, 181 (D.C. 2006) (the court will uphold exculpatory clauses in the absence of gross negligence, willful act, or fraud).

In the instant case, it is undisputed that prior to July 2009 the Trust checking account funds[4] were insufficient[5] to pay the insurance premiums. Ex. 1, at ¶1.  This circumstance implicates the broad and unambiguous Trust provision which provides Dr. Orchin "***shall not be liable to any extent whatsoever for [] nonpayment***" of premiums when the Trust principal is insufficient "to pay such premiums." Ex. 3, at 4(c) (emphasis added). The parties' intent is explicit that not only is Dr. Orchin not required to make the premium payments but, further, he is to be completely exculpated from any liability "to any extent whatsoever for such nonpayment." *Id*. Moreover, there is no public policy reason why the Court should not enforce these provisions as Plaintiff has not alleged Dr. Orchin acted intentionally, recklessly or that his actions were grossly negligent. *See generally* Pl.'s Am. Compl., ECF No. 21. Thus, the plain language of the Trust Agreement precludes Plaintiff's claim for negligence and breach of fiduciary duty.

### B. Plaintiff Cannot Establish her Claim for Negligence or Breach of Fiduciary Duty Because Dr. Orchin Acted in Good Faith and With Ordinary Diligence.

In addition to the above exculpatory language, the Trust Agreement provides:

> The Trustee shall not be held liable for any action taken *or not taken* or for any loss of depreciation in the value of in the value of any property in the trust estate, whether due to an error of judgment or otherwise, *where such Trustee has exercised good faith and ordinary diligence* in the exercise of his duties.

---

[4] Aside from the insurance policy itself, the Trust checking account funds were the only assets of the Trust.

[5] The balance of the Trust checking account was insufficient to pay the Insurance Premium due on July 1, 2009 in the amount of $1,317.03. *See* Ex. 6, July 2009 Premium Notice; *see also* Ex. 1, at ¶1 (Dr. Orchin's sworn declaration stating that at the time the subject insurance premiums were due the Trust's checking account balance was less than $200).

Ex. 3, at ¶8(R) (emphasis added).  Black's Law Dictionary defines "ordinary diligence" as "[t]he diligence that a person of average prudence would exercise in handling his or her own property[6] like that at issue." Ordinary diligence; Black's Law Dictionary (9th ed. 2009); *see also Holladay v. Kennard*, 79 U.S. 254, 258, 20 L. Ed. 390 (1870) ("Ordinary diligence, like most other human qualifications or characteristics, is a relative term, to be judged of by the nature of the subject to which it is directed."); Unif. Probate Code §7-302 (2011), 8 U.L.A. pt. I, at 507 (1998) (defining trustee's standard of care as handling "trust assets [in a manner] that would be observed by a prudent man dealing with the property of another").  Whereas, "good faith" is defined as, *inter alia,* a state of mind consisting in "honesty in belief or purpose" or "[the] absence of intent to defraud or to seek unconscionable."  Good faith, Black's Law Dictionary (9th ed. 2009); *see also United Roasters, Inc. v. Colgate-Palmolive Co.*, 485 F. Supp. 1049, 1057 (E.D.N.C. 1980) aff'd, 649 F.2d 985 (4th Cir. 1981) (upholding jury instruction that "good faith means honesty in intention").  Furthermore, any determination of the standard of care, or any violation thereof, is a question of fact for the jury.  *See Gilbert v. Miodovnik*, 990 A.2d 983, 999 (D.C. 2010) (stating the question of standard of care is "one of fact for the jury").

    In the instant case, Plaintiff's Summary Judgment Motion alleges that Dr. Orchin was negligent and breached his fiduciary duty "by failing to notify Great-West of his change of address." Mem. in Support of Pl.'s Mot. for Summ. J. May 9, 2013, ECF No. 30, at pp. 11-12. Plaintiff further baldly alleges Dr. Orchin was "not excused from the loss because…he was not acting in good faith and with ordinary diligence." *Id.* These unsupported allegations fail to establish both what ordinary diligence required and how Dr. Orchin's actions lacked good faith.

---

[6] While Dr. Orchin specifically notified the U.S. Postal Service of his change of address, he did not individually notify any other organization that his address had changed and, accordingly, treated the trust property with the same level of care as his own affairs. *See* Ex. 1, at ¶4.

On the contrary, Dr. Orchin affirmatively directed the postal service to send his mail[7] to the new

address.[8] *See* Compl. October 26, 2012, ECF No. 1, at ¶ 25-26; Ex. 5, at 51:18-22–52:1-12,

97:21-22- 98:1-8; *see also* Ex. 7, Change of Address Form. Additionally, Plaintiff fails to allege

anywhere in her complaint that Dr. Orchin, at any time, was not acting in "good faith."  *See* Pl.'s

Am. Compl. February 1, 2014, ECF No. 21. Accordingly, Plaintiff's claims must fail.

### C.  The Plain Language of the Trust States Dr. Orchin was under No Duty to Pay the Premiums, which Precludes a Claim for Negligence and Breach of Fiduciary Duty.

In order to establish negligence, Plaintiff must demonstrate the presence of a legally

cognizable duty. *See, e.g., West Virginia Cent. & P.R. v. State ex rel. Fuller,* 96 Md. 652, 666, 54

A. 669, 671–72 (1903) ("there can be no negligence where there is no duty that is due; for

negligence is the breach of some duty that one person owes another"). Likewise, when the

fiduciary duty does not exist, Defendant cannot breach it. *See Vogler v. Countrywide Home*

*Loans, Inc.,* 1:10CV370, 2010 WL 3394034 (M.D.N.C. Aug. 26, 2010). ("Without a fiduciary

duty to Plaintiff[], there could be no breach of such a duty. This claim should be dismissed.").

In the instant case, the Trust Agreement creates the legal relationship between the parties

and any duties as well as the scope of those duties.  As stated above, the Trust Agreement

explicitly provides "[i]f at any time the principal of the trust estate… shall ***be insufficient to pay***

***such premiums*** and other charges, the Trustee ***shall be under no obligation to make such***

***payments and shall not be liable to any extent whatsoever for such nonpayment."*** Ex. 3, at

4(c).  Moreover, it is undisputed that prior to July 2009 the Trust checking account funds were

---

[7] This direction caused mail addressed to the former residence to be forwarded to his new residence, without interruption. *See* Ex. 1, at ¶5.  Further, in the unlikely event the mail did not reach his new residence it would be sent back to the sender with instructions that the Dr. Orchin no longer resided at the stated address.

[8] Although Great-West has yet to produce an actual record that it mailed the required notices, the company also claims it did not receive any mail returned as undeliverable.  *See* Ex. 8, Transcript of October 16, 2013, Deposition of Gina Goodreau, at 77:15-22.

insufficient to pay the insurance premiums. *See* Ex. 1, at ¶1. Accordingly, the specific terms of the Trust Agreement impose no legal duty or obligation on Dr. Orchin to pay the premiums when the principal is "insufficient to pay [] premiums"; therefore, in this circumstance, no action for negligence or breach of fiduciary duty can arise from a nonexistent duty. Ex 1, at 4(c).  As a result, both of Plaintiff's claims suffer from the same fatal defect.

### D.  The Failure to Pay the Premiums was Not the Proximate Cause of the Injury to Plaintiff.

As stated above, in order to establish claims for negligence and breach of fiduciary duty, Plaintiff must establish that her damages were proximately caused by Dr. Orchin's alleged breach of an owed duty.  *See D.C. v. Harris*, 770 A.2d 82, 87 (D.C. 2001) (in addition to other negligence elements Plaintiff must establish "damage to the interests[], proximately caused by [Defendant's] the breach."); *see also Armenian Genocide Museum & Mem'l, Inc. v. Cafesjian Family Found., Inc.,* 595 F. Supp. 2d 110, 116 (D.D.C. 2009) (in addition to other breach of fiduciary duty elements, Plaintiff must establish "the breach was a proximate cause of an injury").  This jurisdiction has defined proximate cause as the "cause which, in natural and continual sequence, unbroken by any efficient intervening cause, produces the injury and without which the result would not have occurred." *D.C. v. Zukerberg*, 880 A.2d 276, 281 (D.C. 2005) (*citing St. Paul Fire & Marine Ins. Co. v. James G. Davis Constr. Corp.,* 350 A.2d 751, 752 (D.C.1976) (internal quotation marks omitted)). Stated otherwise, "when a claim is too remote, there can be no proximate cause and, ultimately, no standing." *Serv. Employees Int'l Union Health & Welfare Fund v. Philip Morris, Inc.,* 83 F. Supp. 2d 70, 81 (D.D.C. 1999) aff'd in part, rev'd in part, 249 F.3d 1068 (D.C. Cir. 2001) (reversed in part on other grounds).  Further, as with any question of fact, this inquiry is typically reserved for the trier of fact.  *See C & E Servs.,*

*Inc. v. Ashland Inc.*, 601 F. Supp. 2d 262, 272 (D.D.C. 2009) ("Thus, as causation is a question of fact for the jury, I will not second guess the jury's view of the evidence.").

In the present case, the Trust Agreement required "[a]ll premium notices shall be mailed to the Trustee, c/o Jeremy D. Orchin…and such other parties as the Trustee may designate, with a copy to Grantor." Ex. 3, at 4(e).  According to the language of the provision, and supported by the expert opinion of Nicholas D. Ward, this provision required the settlor, Dr. Gadaire, to arrange for Great-West to provide him with copies of all premium notices.  *See* Ex. 4, at p. 1; *see also* Ex. 9, Expert Report of Daryll W. Martin, at pp. 6-7 (stating that insurance companies will honor requests to direct premiums notice to certain individuals).  Further, at the time the Trust Agreement was signed "only [Dr. Gadaire] could give the insurance company instruction as the Trustee was not yet the owner [of the policy]" and, therefore, it was Dr. Gadaire's obligation to ensure Great-West was properly notified. Ex. 4, at p. 4.  If Dr. Gadaire had carried out his duty under the agreement, both he and Plaintiff would have received copies of the premiums notices.[9] *See* Ex. 3, at 4(e); *see also* Ex. 9, at p. 2. Thereafter, Dr. Gadaire or Plaintiff could then have either notified Dr. Orchin, placed the money in the Trust checking account, or contacted the insurer directly to resolve the discrepancy. *See* Ex. 4, at p. 5.  Moreover, this provision was placed in the Trust Agreement as a failsafe to prevent any unforeseen issue, such as this, where the allegedly sent notices failed to reach Dr. Orchin. *See* Ex. 9, pp. 6-7.  Accordingly, in the event Dr. Gadaire received a notice and Dr. Orchin had not yet requested the funds to be placed in the Trust checking account, Dr. Gadaire or Plaintiff could make the necessary arrangements to ensure the premium was paid. *See* Ex. 4, at p. 5.  Dr. Gadaire's failure to carry out this

---

[9] In the expert opinion of Mr. Martin, Dr. Gadaire would also have received copies of the lapse notices because of their relationship to the premium notices. Ex. 9, at p. 2.  ("Notices that should have been provided…should have included, not only premium notices, but because of their relationship…lapse notices as well").

requirement acted as an "intervening cause" thereby breaking the causal connection to Plaintiff's

claimed injury. *See id.*  Consequently, Plaintiff has not and cannot establish that any alleged

breach of Dr. Orchin's duties proximately caused the claimed injury.

### E.  Plaintiff's Claim for Negligence is Barred by the Doctrine of Contributory Negligence.

Plaintiff's actions constitute contributory negligence. Under D.C. law, contributory

negligence is a complete bar to Plaintiff's recovery.  *Wingfield v. Peoples Drug Store, Inc.,* 379

A.2d 685, 687 (D.C. 1977) ("The rule is simply that contributory negligence bars a plaintiff's

recovery"). "To assert the defense of contributory negligence, a party must establish, by a

preponderance of the evidence, that the plaintiff failed to exercise reasonable care and that this

failure was a substantial factor in causing the alleged damage or injury." *Massengale v. Pitts*, 737

A.2d 1029, 1031 (D.C. 1999) (internal citations and quotation marks omitted); *see also Sinai v.

Polinger Co.,* 498 A.2d 520, 528 (D.C.1985) (defining proximate cause as "an act that play[s] a

substantial part in bringing about the injury or the damage") (internal quotation omitted).

In this matter, it is undisputed that the Trust's checking account did not maintain

sufficient funds to pay the semi-annual insurance payments and, thus, it was Plaintiff's

responsibility to provide Dr. Orchin with the money required for the semi-annual premium

payments. *See* Ex. 1, at ¶1. Additionally, Plaintiff provided this money to Dr. Orchin regularly

for 16 years, yet did not notify Dr. Orchin that the money had not been provided for the two

insurance periods at issue. *See* Ex. 2, at 8:15-22–9:1-3. Moreover, Plaintiff knew the premium

payments were due semi-annual on designated dates, but failed to institute any sort of calendar

system to track her affirmative obligation to provide the requisite funds to the Trust.  *See* Ex. 4,

at p. 5 (stating had Ms. Gadaire instituted any calendar system she would be in a position to

remedy any nonpayment or premiums); s*ee generally* Ex. 10, Expert Report of Robert A.

Gazzola, at p. 3 (charging Dr. Orchin with negligence for failing to institute a calendaring system for the Trust payments); *see also* Ex. 2, at 8:15-22–9:1-3; Ex. 1, ¶2. Finally, Plaintiff failed to notify Great-West or Dr. Orchin that she was not receiving copies of the premium notices for the 16 year period, which would have notified her of the required insurance payment. *See* Ex. 4, at p. 5. Each of these events, individually and collectively, demonstrates Plaintiff's failure to exercise reasonable care and were substantial factors in bringing about the ultimate injury and damages she is now seeking from Dr. Orchin.  Accordingly, the doctrine of contributory negligence bars Plaintiff's recovery against him.

### F.  Plaintiff's Claim for Negligence is Barred by the Doctrine of Assumption of Risks.

Plaintiff assumed the risk of the injury she is now claiming. "Assumption of risk, like contributory negligence, is an affirmative defense in negligence cases and may operate as a complete bar to liability." *Juvenalis v. D.C.,* 955 A.2d 187, 193 (D.C. 2008). While the doctrines overlap, "[c]ontributory negligence usually requires a determination of the reasonableness of the plaintiff's conduct, whereas assumption of risk focuses on the voluntariness of it." *Phillips v. Fujitec Am., Inc.*, 3 A.3d 324, 328 (D.C. 2010). An "[a]ssumption of risk occurs when a plaintiff voluntarily consents to incur a risk. The consent may be express ... or implied by conduct." *Burke v. Air Serv Int'l, Inc.,*775 F. Supp. 2d 13, 22 aff'd, 685 F.3d 1102 (D.C. Cir. 2012).

Here, as stated above, Plaintiff knew she was not receiving copies of the semi-annual premium statements, yet she took no action to institute a calendar system or remedy Great-West's consistent failure to send the premium notices. *See* Ex. 4, at p. 5.  Instead, for convenience, she chose to rely exclusively on Dr. Orchin notifications. *See* Ex. 2, at 8:15-22–9:1-3; Ex. 1, ¶2. She did this despite her knowledge that the Trust's checking account maintained insufficient funds to pay the semi-annual insurance premiums and her knowledge that the Trust

Agreement's specifically required that her residence receive copies of the premium notices as a failsafe protection for Dr. Orchin.[10] *See* Ex. 1, at ¶5; Ex. 3, at 4(e). As a result of Plaintiff's election to rely exclusively on Dr. Orchin, and forgo any system or notification to protect both the trustee and her interest in the Trust, she has assumed the risk associated with cancelation for non-payment of premiums and cannot now recover against him.

## VI.    CONCLUSION

WHEREFORE, based on the foregoing, Defendant respectfully requests this Court deny Plaintiff's Motion for Summary Judgment and award such other relief as the Court deems just and equitable.

Respectfully submitted,

_____/s/_____
Richard Murray (DC Bar #39172)
Ian A. Cronogue (DC Bar #1018169)
**POMPAN, MURRAY & WERFEL, PLC**
601 King Street, Suite 400
Alexandria, Virginia  22314
Phone: (703)739-1340
Facsimile: (703) 836-6842
rmurray@pompanmurray.com
iancronogue@pompanmurray.com
*Counsel for Defendant/Cross-Claimant Jeremy Orchin*

---

[10] As stated above, this was especially important as Dr. Orchin was not a professional trustee and was only serving as trustee because he was "best friends" with the Gadaires. *See* Ex. 5, at 10:4-22-11:1-4; Ex. 2, at 5:11-22-6:1-13. Perhaps most demonstrative of Dr. Orchin's intent to do this as a favor for his friends is the fact that he was never compensated for his efforts, despite a specific trust provision requiring he be paid. *See* Ex. 3, at ¶9; Ex. 5, at 95:9-12.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of July 2014, a copy of the foregoing Opposition to Plaintiff's Motion for Summary Judgment and Memorandum in Law of Support was served via Electronic Court Filing to:

Raighne C. Delaney, Esq.
James V. Irving, Esq.
Juanita F. Ferguson, Esq.
**BEAN, KINNEY & KORMAN, P.C.**
2300 Wilson Boulevard, Seventh Floor
Arlington, Virginia 22201
rdelaney@beankinney.com
jirving@beankinney.com
jferguson@beankinney.com
*Counsel for Plaintiff Elizabeth D. Gadaire*


Craig D. Roswell, Esq.
Matthew J. Youssef, Esq.
**Niles, Barton & Wilmer, LLP**
111 South Calvert Street, Suite 1400
Baltimore, Maryland 21202
cdroswell@nilesbarton.com
mjyoussef@nilesbarton.com
*Counsel for Defendant Great-West*


_____/s/_____
Richard Murray