## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JEREMY D. ORCHIN, TRUSTEE OF THE EUGENE C. GADAIRE INSURANCE TRUST, | ) ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:12-CV-1743-BAH |
| | ) | |
| GREAT-WEST LIFE & ANNUITY INSURANCE COMPANY, | ) ) | |
| | ) | |
| DEFENDANT. | ) | |
| _____ | ) | |
| | ) | |
| ELIZABETH GADAIRE, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:13-CV-00055 |
| | ) | (CONSOLIDATED WITH ABOVE) |
| JEREMY D. ORCHIN, *et al,*. | ) | |
| | ) | |
| DEFENDANTS | ) | |
| _____ | ) | |

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT OPPOSITION OF JEREMY D. ORCHIN AND ELIZABETH GADAIRE TO GREAT-WEST'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs Jeremy D. Orchin, Trustee of the Eugene C. Gadaire Insurance Trust

("Orchin") and Elizabeth Gadaire ("Gadaire"), collectively ("Plaintiffs"), hereby file this Joint

Opposition to the Motions for Summary Judgment ("Motions") filed by Defendant Great-West

Life & Annuity Insurance Company ("Great-West") against Orchin and Gadaire, respectively.

As Great-West points out in its Motions, Counts I, I, III, IV, and V in Gadaire's Amended

Complaint sound against Great-West (the remaining two are against Orchin) and are

substantively identical to Counts I, II, III, IV, and V in Orchin's Amended Complaint against

Great-West. Great-West has moved for summary judgment against Counts I, II, III, IV, and V in

Orchin's Amended Complaint and against Counts I, II, III, IV, and V in Gadaire's Amended

Complaint. Great-West fails to overcome Plaintiffs' stated claims and the Motions should be

denied as a matter of law.

## I.      INTRODUCTION

The focus of the dispute between Plaintiffs and Great-West is what occurred during

telephone conversations between Orchin and employees at Great-West on January 18, 2010 and

whether any representations made by Orchin misled Great-West. Plaintiffs allege that Great-

West breached the terms of the Policy when it failed to tender insurance proceeds on the Policy.

Great-West argues that Plaintiffs' claims should be summarily dismissed because Great-West's

decision on January 18, 2010 to reinstate the Policy was ineffective.  The basis for Great-West's

decision is that it did not know the truth due to Orchin's misrepresentations or, alternatively, that

Illinois law applies and therefore, Plaintiffs' claims are precluded. (Great-West Mot. Summ. J.)

## II.     STANDARD OF REVIEW

In ruling on a summary judgment motion, the Court may not weigh the evidence and

resolve issues of fact; disputed facts must be left for resolution in a trial.  *Anderson v. Liberty

Lobby, Inc.,* 477 U.S. 242, 249-50 (1986).  Moreover, all reasonable inferences from the

evidence must be drawn in favor of the non-movant. *DeValk Lincoln Mercury, Inc. v. Ford

Motor Co.,* 811 F.2d 326, 329 (7th Cir. 1987); *v. Allis-Chalmers Corp.,* 799 F.2d 311, 312 (7th

Cir.  1986)..  Viewing Great-West arguments in a light most favorable to Plaintiffs, MISSING

WORD Motion is factually flawed and should be denied as a matter of law.

Illinois courts reviewing summary judgment motions apply the same standard when

determining whether summary judgment in a matter is proper.  If there is a dispute of facts, it is a

question for the fact-finder and summary judgment is an improper remedy.  *See F.H. Prince & Co. v. Towers Fin. Corp.*, 565 N.E.2d 142, 150 (Ill. App. 1995) (reasoning that whether an alleged misrepresentation is an inducement is a fact question). *See also Mooney v. Underwriters at Lloyd's,* 213 N.E.2d 283, 285 (Ill. 1965) (discussing whether statements alleged to be misrepresentations could be interpreted as misleading.).  Whether the matter is decided under the laws of the District of Columbia or the laws of Illinois, the Motion should be denied as a matter of law.

## III. COUNT I OF THE AMENDED COMPLAINTS DICTATES THAT DISTRICT OF COLUMBIA LAW GOVERNS REINSTATEMENT OF THE POLICY

### A. Public Policy Interests Dictate that DC Law Controls.

The American Dental Association Group Life Insurance Policy (the "Policy") should be analyzed under the laws of the District of Columbia.  First, relief under Counts I and IV of  the Amended Complaints, both  for breach of contract, is derived from D.C. Code § 31-4201 *et seq.* All insurance companies doing business in the District of Columbia are subject to the "Life Insurance Act" (the "Act").  D.C. Code § 31-4201.   The Act includes language that protects Plaintiffs from unilateral cancellation or forfeiture of the Policy. Great-West argues that the Court should not consider DC law or the policy interests that predicate the Act because Illinois law governs.

#### 1. There are insufficient contacts with the State of Illinois.

"[P]arties to a contract may specify the law they wish to govern, as part of their freedom to contract, as long as there is some reasonable relationship with the state specified." *Norris v. Norris*, 419 A.2d 982, 984 (D.C. 1980).  Great-West argues that there is a reasonable relationship with Illinois because the corporate headquarters of the sponsor of the Policy, i.e. the American Dental Association ("ADA"), is in the State of Illinois. The geographical location of the ADA's

3

headquarters is an insufficient basis to ignore the applicability of DC law in this case.  There is

no reasonable relationship between this litigation and THE State of Illinois.  Even if there was

sufficient contact with the State of Illinois to justify the application of its laws in this matter, the

forum selection clause in the Policy would still be invalid in light of the fact that it would defeat

the public policy interests of D.C. law.

### 2.   D.C. law should be applied in evaluating a life insurance policy.

In arguing that Illinois law governs, Great-West's reliance on *Whiting v. AARP*, 637 F. 3d

355 (D.C. Cir. 2011), is misplaced.  *Whiting* involves a group health insurance policy, not a life

insurance policy as is at issue in this matter. However, Great-West also cites the Restatement.

Both the Restatement and the secondary sources cited in *Whiting* are clear that the minimum

contacts test that is applied to group health insurance policies is artificially broad, reflecting the

public policy that favor such group policies.  In the case of a widely available group plan, which

by its nature offers broadly available benefits across the country, such as that offered by the

AARP in *Whiting*, a lower jurisdictional bar is appropriate.  *See* Restatement (Second) Conflict

of Law § 192 cmt. E (1971).  No effect will be given to a choice of law provision in a life

insurance contract designating a state whose local law gives the insured less protection that he or

she would receive under the otherwise applicable local law, which,  will usually be the local law

of the state where the insured was domiciled at the time the insured applied for a policy. *Id.* at

cmt. C.   In this case, that would mandate that the laws of the District of Columbia should apply.

*Id.*

A more valid test is that established by *King v. Liberty Life Assurance Co*., 806 F. Supp.

2d 25, 29 (D.D.C. 2011).  In reviewing the choice of law applicable to a group disability

insurance policy, the court found the contractual election of Virginia law to be enforceable, but

only because substantial contacts made the election fair.  In *King*, the insurer delivered the policy

to the Fairfax Public Schools, a government entity created and operating in Virginia, the policy

covered employees of the Fairfax County Public Schools, including the plaintiff, and the plaintiff

was a Virginia resident.  Additionally, neither party disputed the application of Virginia law.

*King* supports that a choice of law provision will not be applied without careful consideration of

the amount of contacts a forum has to a party.  Illinois has an attenuated interest, at best, in the

outcome of this matter and the laws of the District of Columbia should be applied.

### 3.   D.C. has an interest in protecting Plaintiffs' interests.

In evaluating the Policy, D.C. law should be applied because a central tenet of the Act is

to protect insureds residing in the District of Columbia from the hardships of a loss of insurance

policy benefits. "Insurance forfeitures are disfavored because insurance serves an important

function in contemporary society: the broad sharing of risks and losses helps alleviate the

expense of misfortune. Thus, even in doubtful cases, courts should be quick to find facts

supporting coverage." *Abbey v. Lumbermen's Mut. Cas. Co.*, 404 N.E.2d 991, 992 (Ill. App. Ct.

1980) (citing *Van Hulle v. State Farm Mut. Automobile Ins. Co.*, 255 N.E.2d 453, 460-61 (Ill.

App. Ct. 1969)).

D.C. has adopted an identical view regarding disfavor of forfeitures in insurance contracts.

*Nat'l Benefit Ass'n v. Elzie*, 35 App. D.C. 294, 297-99 (D.C. Cir. 1910) (holding that a life

insurance company was estopped from denying a claim after the company unconditionally

accepted late payments, even though company's usual policy was to give conditional

acceptances).  "Any agreement, declaration, or course of action on the part of an insurance

company, which leads a party insured honestly to believe that by conforming thereto a forfeiture

of his policy will not be incurred, followed by due conformity on his part, will and ought to estop

the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract." *Id.* at 297.

### IV.   COUNT II CONTAINS GENUINE ISSUES OF FACT IN DISPUTE

#### A.  The Reinstatement Should Be Resolved in Favor of Plaintiffs.

The Policy should be construed against Great-West.  Since Great-West wrote the Policy, any ambiguity should be resolved in favor of Plaintiffs. This is true regardless of whether the law of District of Columbia or the State of Illinois is applied.  *See Traveler's Indem. Co v. United Food Commer. Workers Int'l Union*, 770 A.2d 978, 986 (D.C. 2001); *Hartford Fire Ins. Co. v. Tewes*, 132 Ill. App. 321, 328 ( Ill. App. Ct. 1907).  In *Hartford,* the Court refused to recognize the insurance company's effort to declare a policy canceled as of the day of loss: "[Policy] language is to be construed *against the company* and so as to give the protection which was the object of the contract."  *Tewes*, 132 Ill. App. at 328 (emphasis added).  Similarly, the object of the Policy was to provide a death benefit for Gadaire at the time of Dr. Gadaire's passing.  The actions of Great-West support that summary judgment should not be awarded to Great-West, as there are genuine issues in dispute regarding the applicability of Illinois law to the actions of Great-West.

#### B.  Orchin Did Not Make Misrepresentations to Great-West.

Great-West claims that the reinstatement was invalid due to Orchin's "fraudulent" statements, and since the Policy was terminated properly, its denial was appropriate.   Fraud consists of five elements: "(1) a false representation (2) made in reference to a material fact, (3) with knowledge of its falsity, (4) with intent to deceive, and (5) an action that is taken in reliance upon the representation." *Park v. Sandwich Chef, Inc.*, 651 A.2d 798, 801 (D.C. 1994) (quoting *Hercules & Co. v. Shama Rest. Corp.*, 613 A.2d 916, 923 (D.C. 1992)). Additionally, there is a

sixth element in cases involving commercial contracts negotiated at arm's length: "that the defrauded party's reliance be reasonable." *Id.* (quoting *Hercules & Co.,* 613 A.2d at 923).

Great-West cannot satisfy the elements for a fraud claim.  In order to plead fraud in defense of performing on a contract, all elements of the claim must be plead with particularity. *Sarete, Inc. v. 1344 U St. Ltd. P'ship*, 871 A.2d 480, 493 (D.C. 2005).  Great-West simply alleges that Orchin made an affirmative false representation that Dr. Gadaire was deceased. (Def.'s Mot. Summ. J. 27.)If any of the elements of fraud are not proven, the claim must fail. *Higgs v. Higgs*, 472 A.2d 875, 876 (D.C. 1984).

"A misrepresentation is an assertion that is not in accord with the facts." Restatement (Second) of Contracts § 159 (1981). For a statement to constitute a fraudulent misrepresentation, it must be consciously false, and made with the intent to deceive another. *Id.* § 162 & cmt. a. *See Sarete*, 871 A.2d at 493; *Harley-Davidson Motor Co. v. Powersports, Inc.*, 319 F.3d 973, 991-92 (7th Cir. 2003). Illinois law defines a misrepresentation as "a statement of something as a fact which is untrue." *Am. Ins. Corp. v. Sederes*, 807 F.2d 1402, 1407 (7th Cir. 1986) (quoting *Weinstein v. Metro. Life Ins. Co.*, 60 N.E.2d 207, 210 (Ill. 1945)).  The statements that Great-West claims "affirmatively misled" the insurer were, "I'm the trustee *for a friend of mine.*", "I don't want [him or them — *parties disagree*] to know I did this") and "*I don't want them to know.*" (Def.'s Mot. Summ. J. 7, 27.)

**1.  There is no clear and convincing evidence to support a misrepresentation.**

The phrase "for a friend of mine" does not explicitly or implicitly make reference to the living status of the insured. In order for Orchin's statements to rise to the definition of misleading there would have to be clear and convincing evidence that the statement is "not [as] equally consistent with honesty [as with] deceit." *Zoslow v. Nat'l Sav. & Trust Co.*, 201 F.2d

208, 209 (D.C. Cir. 1952) (citing *Public Motor Service v. Standard Oil Co. of New Jersey*, 69

App. D.C. 89, 91, (D.C. 1938). To require unnatural, descriptive language to be used in

conversation to avoid misrepresentation is a burden the law doesn't require. Similarly, the phrase

"I don't want them to know I did this" can reasonably refer to the beneficiary, executor, or

residual legatees of a deceased insured. A substantial sum of money was a stake, and Orchin

could reasonably have been thinking of either the late Dr. Gadaire or Mrs. Gadaire as the

beneficiary of the insurance proceeds. The fact that a disagreement exists surrounding what

exactly was said, "him or them–parties disagree" by its very definition is a dispute of fact that

makes this an inappropriate case for summary judgment.

Orchin's reference to "a friend of mine" is not a false representation of material fact such

that summary judgment should be awarded in favor of Great-West. Even of the Court accepted

the weak argument that the "friend of mine" reference was a false representation, Great-West

still cannot satisfy the elements of fraud. Great-West cannot and does not allege that it was

reasonable for it not to inquire whether Dr. Gadaire was alive during the conversation See *Park,*

651 A.2d at 801.

### 2. Orchin did not owe a duty to Great-West.

Non-disclosure can be the source of fraud only if there is a duty to speak. *See Kapiloff v.*

*Abington Plaza Corp.,* 59 A.2d 516, 517 (D.C. 1948). Great-West does not allege that Dr.

Gadaire had a duty to offer unsolicited information during the January 18, 2010 phone

conversation. As the insurer and more importantly, the party with all of the power to reinstate the

Policy, it was Great-West who was derelict in failing to inquire about the life status of Dr.

Gadaire. To avoid the Policy for a material misrepresentation, Great-West has the burden of

proving the falsity of Orchin's statements. The absence of a statement does not justify failing to

reinstate the Policy.  *Prudential Ins. Co. v. Saxe*, 134 F.2d 16, 27 (D.C. Cir. 1943) (holding that in order to avoid a life insurance policy for material misrepresentation, the insurer had the burden of proving that the insured knowingly made false statements with the intent to deceive). Since Great-West is unable to satisfy all six elements of a claim for fraud, summary judgment is improper.

## V.     COUNT III IS NOT RIPE FOR SUMMARY JUDGMENT

### A.  Great-West had a Duty to Maintain Contact with Plaintiffs.

As the insurer for the Policy, Great-West owed an implied reciprocal duty of good faith and dealing to Plaintiffs.  While D.C. has not addressed the issue good faith and fair dealing in the context of an insurance policy, other jurisdictions have been consistent that parties to a contract have implied duties to each other.  *See L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 791 F.2d 1356, 1361 (9th Cir. 1986) ("[T]his implied promise of good faith and fair dealing is "reciprocal," a "two-way street" which demands mutual compliance from the contracting parties."); *Silberg v. Cal. Life Ins. Co.,* 11 Cal. 3d 452, 460-61 (1974) (reasoning that the covenant of good faith and fair dealing requires that neither party will do anything to injure the right of the other to receive the benefits of the agreement, and an insurer is obligated to consider an insured's interests as much as its own).  *See also Hudson v. Moore Bus. Forms, Inc.*, 836 F.2d 1156, 1160-61 (9th Cir. 1987) (reasoning that in every contract an implied covenant of good faith and fair dealing exists.)  Great-West received premiums under the Policy for almost 35 years ( Orchin Am. Compl., ex 1.))  It had an implicit duty to provide notice to Plaintiffs prior to canceling the Policy.  (Orchin Am. Compl., ex. 2.)

**VI.     GREAT-WEST BREACHED ITS OBLIGATION UNDER THE DISTRICT OF
COLUMBIA MUNICIPAL REGULATIONS**

   **A.  Both Choice of Law and Regulatory Purpose Demand Application of District of
        Columbia Law.**

Great-West insists that District of Columbia Municipal Regulations (DCMR) Title 26,

Insurance, Chapter 3, Section 301.1 ("DCMR 26-A301") has no application to this dispute

because District of Columbia does not apply to this issue and because, even if it did, the

provision is not applicable. As further stated in Section III herein, District of Columbia law

governs because there exist insufficient minimum contacts to support the application of Illinois

law to the dispute generally and, in any event, because the statutes at issue support the District's

enunciated policy against forfeiture of insurance.  For these reasons, the notice practices

established under the quoted sections of the Code govern.

In particular, Great-West contends that the notice requirements have no application to life

insurance policies and also do not apply because Great-West did not "cancel" the policy.  While

§ 26-A300.1 applies specifically to automobile insurance, § 26-A300.2 broadly sets cancellation

requirements for "other polic[ies]" and as the language in this section is not specifically tailored

to automobile insurance, it should be read to further the District public policy with respect to all

types of insurance. § 26-A301's provisions refer to both cancellation AND nonrenewal, and this

section makes sense if read as applying to a recurring or an enduring policy.

§301.1 is applicable because the Gadaire policy was "cancelled."  Gadaire had an open-

ended policy and failure to pay the semi-annual premium did not result in an automatic

termination of the Policy, but triggered a timeline which allowed Great-West to know the precise

date when it would have been required to give thirty days' notice. The regulations of §301

are broad and should be applied.

Great-West cites to the definition of "cancellation" in § 26-A399 to show that this section only applies to recurring policies ("the insurer's termination, or attempted termination, of the effectiveness of a policy before the end of the policy period."), but the critical distinction is not recurring policies: the definition discusses car insurance.

### B. Plaintiffs are Entitled to an Award of Attorney Fees under Illinois Law

Great-West's reliance on Illinois case law is misplaced.  Great-West argues that: Plaintiff cannot recover attorney fees because 215 Ill. Comp. Stat. 5/155 (1992) only allows for recovery of attorney fees when an insurer has denied benefits in bad faith. In support, Great-West relies on law cited in  *Sieron v. Hanover Fire and Cas. Ins. Co*., 485 F. Supp. 2d 954, 959-60 (S.D. Ill. 2007), but none of the cited cases support Great-West's argument.  Great-West further relies on *Menotti*, 2009 WL 1064605, *3 (N.D. Ill. 2009) to argue that attorney fees are precluded, but Menotti stands for a different proposition: that "[Plaintiff's] claim for future disability benefits under a theory of anticipatory breach of contract is in effect a claim for bad faith denial of benefits and, thus, is preempted by § 155 of the Illinois Insurance Code."  Additionally, the claim preclusion language in *Menotti* is undermined by the language in this case, which states that § 155 is an extra-contractual remedy implemented by the legislature to solve the problem created by insured individuals not being able to recover attorney fees for breach of contract claims.  The court states that a plaintiff may sue for breach of contract, as well as seek fees under § 155. Also, the court held § 155 did not preempt a separate and independent tort action involving insurer misconduct. While *Cramer v. Ins. Exch. Agency*, 174 Ill. 2d 513, 526-30 (1996) identifies § 155 as an extra-contractual remedy, nothing in *Cramer* states that a plaintiff must separately request attorney fees.

Furthermore, even if Illinois law applies, 215 Ill. Comp. Stat. 5/155 (1992) does not bar recovery. The statute provides that attorney fees may be awarded "[i]n any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable." 215 Ill. Comp. Stat. 5/155(1) (1992). Illinois courts have identified this as a flexible test. *Emerson v. Am. Bankers Ins. Co. of Fla.*, 585 N.E.2d 1315, 1320 (Ill. App. 1992) ("What constitutes bad faith depends largely upon the particular circumstances of the case, particularly the insurer's conduct and its reasons for nonpayment."). In Illinois, an insurer's actions are not vexatious and unreasonable if "(1) there is a bona fide dispute concerning the scope and application of insurance coverage; (2) the insurer asserts a legitimate policy defense; (3) the claim presents a genuine legal or factual issue regarding coverage; or (4) the insurer takes a reasonable legal position on an unsettled issue of law." *TKK USA, Inc. v. Safety Nat'l Cas. Corp.*, 727 F.3d 782, 793 (7th Cir. 2013). Thus, at a minimum, the question of attorney's fees must be preserved for trial.

## VII.   THE COURT SHOULD NOT GRANT SUMMARY JUDGMENT ON COUNT V OF THE AMENDED COMPLAINTS

### A.   Great-West Accepted Dr. Gadaire's Offer to Assume a Duty to Send Notices.

The submission of the Insurance Trust Document and the assignment of incidents of ownership form was an offer to Great-West to continue the Policy subject to the condition that Great-West agree to the stipulations of the Insurance Trust Document. Plaintiffs sent a copy of the Insurance Trust Document to Great-West with the assignment of incidents of ownership (Orchin Am. Compl., exs. 3, 4.) Despite that Great-West denied that it 1) agreed to be bound by the terms of the Insurance Trust Document, and 2) ever had a contractual obligation to send

12

notices to Dr. Gadaire (Great-West Answer to Orchin Am. Compl., ¶¶ 18, 29), its actions

suggested otherwise.  Also, by accepting the premiums, Great-West did not act in an unusual

manner in modifying the terms of the Insurance Policy. "[O]ften parties modify their agreement

orally or by their subsequent actions." *Alderman Drugs, Inc. v. Metro. Life Ins. Co*., , 515

N.E.2d 689, 695 (Ill. App. Ct. 1987).  Great-West accepted insurance premiums from the Trust

and that creates a genuine issue of material fact that Great-West assumed a duty to act in

accordance with the Insurance Trust Document.

The parties, through their actions, agreed that Great-West would send notices to Plaintiffs.

*See RDP Techs., Inc. v. Cambi AS*, 800 F. Supp. 2d 127, 140-41 (D.D.C. 2011) *citing*

Restatement 2d of Contracts, § 22.  "A meeting of the minds takes the form of an offer or

proposal by one party followed by an acceptance by the other party. . . .  Once an offer is made,

the offeree possesses the power of acceptance and can bring the contract into existence by

accepting the offer." *Id.* (Citations removed).  *See Claire's Stores, Inc. v. Companion Life Ins.*

*Co.*, 2012 U.S. Dist. LEXIS 30477, 20-22 (N.D. Ill. Mar. 7, 2012) ("[A]n agreement is typically

enforceable where there has been an offer, an acceptance, and a meeting of the minds as to the

terms of the agreement.").

## B.  The Terms of the Insurance Policy Were Modified.

Once Great-West accepted the terms of the Insurance Trust Document, it had a contractual

obligation to send notices to Plaintiffs.  *Davison v. Bd. of Trs*., 478 N.E.2d 3, 5 (Ill. App. Ct.

1985) (reasoning that acceptance of benefits under a new agreement waives performance under

an old agreement). "[O]ne may waive performance of the original agreement and ratify the

modified contract. If this is done and the party fully performs and accepts the benefit of the new

agreement, he cannot later repudiate it and sue for the difference. . . .  By carrying the modified

contract into effect and accepting its benefits, [the party] ratifie[s] the new agreement and waive[s] performance of the original contract." *Id.*

C. **Great-West Agreed to Be Bound by the Insurance Trust Document When It Accepted Premiums.**

Great-West accepted the benefits of the Insurance Trust Document, i.e., the Policy premiums.  Therefore, it assumed the burden of sending notices as required under the Insurance Trust Document.  *Harris v. Hall's Motor Transit Co.*, 243-69, 1969 WL 10912 (D.C. Gen. Sess. Dec. 22, 1969) (reasoning that a party cannot accept the benefits of a contract and simultaneously deny the disadvantages of the same contract).

D. **Their Right to Receive Notices was Never Waived.**

Neither Dr. Gadaire nor Orchin ever waived their contractual right to receive notices from Great-West.  A waiver is the intentional relinquishment of a known right. In order to intentionally relinquish a known right, a party must have knowledge of the existence of the right and the intention to relinquish it. *Pantle v. Indus. Com.*, 335 N.E.2d 491, 496 (Ill.1975). Plaintiffs never waived their right to receive notices.  (*See* Orchin Mot. Summ. J, ex 21, ¶ 4 ("If Great-West refused or in any way objected to providing notice . . . I would not have accepted the assignment of the insurance policy to the Trust.").)

Great-West cannot support its position that Plaintiffs waived their right to receive notices. The intent to waive must be shown by clear precise and unequivocal evidence. "It is elementary that the burden rests on the party relying on a waiver or estoppel to prove the essentials of such waiver or estoppel by clear, precise and unequivocal evidence." *Utica Mut. Ins. Co. v. Nat'l Indem. Co.*, 173 S.E.2d 855, 858 (Va.1970).  In this case, Plaintiffs had a contractual right not only to receive notices for premiums due, but for any threat of or actual cancellation of the

Insurance Policy. The lapse notice informed Orchin that coverage was about to be terminated.

(Great-West Mot. Summ. J., ex. 6.)  As a result, such a notice carries with it much greater weight

and importance than a premium notice. Because the intent to relinquish the right to receive a

notice of cancellation cannot be reasonably inferred from the lack of enforcing the right to

receive premium notices, intent to waive the right cannot be shown here.

### 1.  The assignment did not abrogate a duty to provide notice.

Great-West did not fulfill its statutory duty to provide notice.

> "No life company doing business in [Illinois] shall declare any policy
> forfeited or lapsed within six months after default in payment of any
> premium installment or interest or any portion thereof, nor shall any
> such policy be forfeited or lapsed by reason of nonpayment when due
> of any premium, installment or interest, or any portion thereof.
> required by the terms of the policy to be paid, within six months from
> the default in payment of such premium, installment or interest,
> unless a written or printed notice stating the amount of such premium,
> installment, interest or portion thereof due on such policy, the place
> where it shall be paid and the person to whom the same is payable,
> shall have been duly addressed and mailed with the required postage
> affixed, to the person whose life is insured, or the assignee of the
> policy, (if notice of the assignment has been given to the company) at
> his last known post office address, at least fifteen days and not more
> than forty-five days prior to the day when the same is due and
> payable, before the beginning of the period of grace."

 Ill. Comp. Stat. Sec. 234(1) (1992).

Dr. Gadaire did not waive notice when he assigned the Policy to the Trust.  *Cf. Clarin Corp. v.*

*Massachusetts Gen. Life Ins. Co.*, 44 F.3d 471, 474-75 (7th Cir. Ill. 1994) (reasoning that the

protections of the statute were expanded to cover insured and the assignee of a policy of

insurance).  In *Clarin,* the plaintiff employer agreed to purchase and maintain life insurance for

an employee.  The plaintiff was also the beneficiary of the policy.  The application for insurance

provided the employee with three choices regarding who was to receive premium notices.  The

employee selected the plaintiff to be the recipient of any notices.  The last premium sent by the

insurer prior to the employee's death was sent to the insurer three days after it was due.  The

defendant insurer refused to pay the policy proceeds to the plaintiff.  The defendant provided a

cancellation notice only to the employer.  A genuine issue of fact arose with respect to whether

the employee validly waived his right to receive notice by assigning that right to the employer.

Although the court dismissed plaintiff's claim on summary judgment and found that the insured

assigned his right to receive notice, it nonetheless ruled that the defendant failed to comply with

215 Ill. Comp. Stat. 534(1) (1992), which required that notice was to be provided to the insured

during his lifetime.  In this case, the Insurance Trust Document was clear that both Dr. Gadaire

and Orchin were to receive notices from Great-West.

### 2.   Dr. Gadaire did not assign his right to receive notice.

There is no evidence to support that Dr. Gadaire waived his right to receive notice.  A

valid assignment must evidence the purpose to transfer ownership of the subject matter of the

assignment and it must describe the subject matter of the assignment with sufficient particularity

to render it capable of identification. *Crooks v. Hendricks (In re Estate of Crooks),* 638 N.E.2d

729, 735 (Ill. App. Ct. 1994); *Stoller v. Exchange Nat'l Bank,* 557 N.E.2d 438, 443 (Ill. App. Ct.

1990).  An assignment occurs where there is a transfer of some identifiable interest from an

assignor to an assignee.  *Id.*; *Klehm v. Grecian Chalet, Ltd.,* 518 N.E.2d 187, 190 (Ill. App. Ct.

1988). Even Great-West admits that it was unaware of anyone sending the Insurance Trust

Document.  (Great-West Mot. Summ. J. 21.)  Since the Insurance Trust Document contained the

notice requirements, a genuine issue of material fact exists that the right to receive notices was

waived and summary judgment should be denied.

### 3.   An insured cannot waive notice under D.C. law.

As the drafter of the Policy, Great-West had a duty to send notices to Dr. Gadaire. There is no express provision in the Policy that absolves Great-West of the duty to send notices to Dr. Gadaire.  If there is any ambiguity in the Policy about providing notice, then the Policy should be construed against Great-West.  *See Meade v. Prudential Ins. Co. of Am.,* 477 A.2d 726, 728 (D.C.1984); *Vaulx v. Cumis Ins. Soc'y,* 407 A.2d 262, 265 (D.C.1979) (citing *Van Hulle,* 254 N.E.2d at 461.   Otherwise, Dr. Gadaire would have had no protection against the uncertainty of insurance coverage.

The nature of the Policy also dictates that Great-West had a duty to send notice to Dr. Gadaire.  *See Mueller v. Healthplus, Inc.*, 589 A.2d 439, 439-41 (D.C. 1991).  In *Mueller,* the plaintiff was a member of a group insurance plan through her employer.  The defendant insurer cancelled the plan by sending notice only to the employer's insurance liaison.  The employer then sent a memorandum to all employees notifying them of the cancellation.  The court held that despite the employee having actual notice of the cancellation, the provisions for the notice of cancellation were ineffective as the insurer needed to send notice directly to the employee.

Even if the Policy had provisions for Dr. Gadaire to waive notice in lieu of Orchin, it is unlikely that D.C. law would find the cancellation notice effective.  Great-West cannot take the position that notice to Orchin satisfies any duty that it had to convey information about the Policy to Dr. Gadaire. That would create a risk of Dr. Gadaire receiving misinformation, or in this case, no information whatsoever, regarding the lapse of coverage or the cancellation of the Policy.  Both scenarios are important provisions of the Policy.  *See Diamond Serv. Co. v. Utica Mut. Ins. Co.,* 476 A.2d 648, 652 (D.C.1984) (reasoning that notice provisions in an insurance contract are of the essence of the contract); *Capital City Benefit Soc'y v. Travers,* 4 F.2d 290, 291

(D.C. Cir. 1925)  (strict compliance with cancellation notice provisions); 2 Steven Plitt et al.,

Couch on Insurance §32:1 (3d ed.1983) ("if a policy of insurance stipulates as to the manner . . .

of cancellation, such condition must be obeyed").

## VIII.   THE REINSTATEMENT OF THE POLICY WAS VALID AND ENFORCEABLE

The Motion should be denied because the reinstated Policy is valid and enforceable.

Great-West wants the Court to evaluate the reinstatement in accordance with the standards

governing an application for insurance, however an application for insurance is subject to a

specific set of rules and tests that are inapplicable to the reinstatement process.  Great-West

reserved the right in the Policy to reinstate the Policy and accept late payments at their sole

discretion without any other stipulations attached. That is exactly what occurred.  Therefore,

Great-West's waiver of the lapsed premium was an express waiver and under its own contractual

terms, Great-West could and did reinstate the Policy.

Because the reinstatement of the contract of insurance was express, the reinstatement

"merely cancels the forfeiture, leaving the original contract in full force." *Froehler v. N. Am. Life*

*Ins. Co.,* 374 Ill. 17, 23, 27 N.E.2d 833,836 (1940) See also *Carter v. Provident Insurance Co.,*

12 F. 2d 960, 962 (D.C. Cir. 1941).  Great-West relies heavily on Illinois doctrine that the insurer

must have knowledge of the intervening loss before an implied waiver can be found, but in the

present case, the waiver was expressly granted before payment was tendered, making this a case

of express waiver.

Great-West's waiver of the forfeiture or reinstatement does not require actual knowledge

of the intervening loss because the waiver was express and not implied.  "Generally the waiver is

not expressed or intentional, but rather it is implied from the conduct of the insurer or its agents."

*Van Hulle,* 254 N.E. 2d at 460.  In *Van Hulle,* the court found that the conduct of the insurer and

its agents waived the lapse of the insurance policy resulting from the failure to pay a premium. On the date of loss, the injured party advised the agent of the injury and tendered the premium check.  The insurer cashed it, but later sent a refund check to the insured.  The court found that the cashing of the check was sufficient acceptance of the premium, even though the insurer tried to refund the payment.

Great-West's waiver of forfeiture via the reinstatement of the policy was an express waiver.  An express waiver requires only an "intentional relinquishment of a known right.  There must be both knowledge of the existence of the right and an intention to relinquish it."  Both elements of this test were met by Great-West, who did not inquire about the status of the insured's health (Orchin Am. Compl. 42-43.) Great-West's policy did not include stipulations for reinstatement, including that the insured be living. *Id.* Great-West specifically waived its company policy of requiring a new application be filled out on attempts to reinstate insurance that had lapsed for as long a period as had lapsed in this case.  (Orchin Am. Compl. 44-45.)

Alternatively, should  the Court find that knowledge of the intervening loss was required, Great-West constructively had such knowledge.  Great-West considered Dr. Gadaire uninsurable on his request for a second policy due to a heart condition.  (Orchin Am. Compl. 46.)  Knowing that Dr. Gadaire had a heart condition that disqualified him from coverage, Great-West was on inquiry notice of his uninsurable status, and yet chose to reinstate the Policy without conditions.

Finally, waiver is a question of facts for the jury. *Provident Life Ins. Co. v. Grant,* 31 A.2d 885, 886 (Mun. Ct. App. D.C. 1943) *Provident* involved the alleged waiver by the insurer of as clause in the policy requiring the insured to submit proof of insurability: "The issue of waiver in such a case is one of fact, to be tried by the jury under proper instructions, or by the court if a jury trial is not demanded."  *Id.*

**IX.     CONCLUSION**

WHEREFORE, for all of the above-listed reasons, Great-West's Motion for Summary

Judgment should be denied.

Respectfully submitted,

/s/ Juanita F. Ferguson
James V. Irving, D.C. Bar # 414422
Raighne C. Delaney, D.C. Bar # 454761
Juanita F. Ferguson, D.C. Bar # 471045
2300 Wilson Boulevard, 7th Floor
Arlington, Virginia 22201
(703) 525-4000
(703) 525-2207 (Fax)
jirving@beankinney.com
rdelaney@beankinney.com
jferguson@beankinney.com
*Counsel for Elizabeth Gadaire*


/s/ Richard Murray
Richard Murray (DC Bar #39172)
Ian A. Cronogue (DC Bar #1018169)
Pompan, Murray & Werfel, PLC
601 King Street, Suite 400
Alexandria, Virginia  22314
Phone: 703.739.1364
Facsimile: 703.836.6842
rmurray@pompanmurray.com
iancronogue@pompanmurray.com
*Counsel for Jeremy D. Orchin*

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 15th day of June, 2014, a copy of the foregoing was served via the Court's ECF system to the following:


Craig D. Roswell, Esq.

Matthew J. Youssef, Esq.

Niles, Barton & Wilmer, LLP

111 South Calvert Street, Suite 1400

Baltimore, Maryland 21202


/s/ Juanita F. Ferguson

Juanita F. Ferguson