**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ELIZABETH GADAIRE,<br><br>     *Plaintiff*,<br><br>v.<br><br>JEREMY D. ORCHIN,<br><br>     *Defendant*. | Civil Action No. 12-1743 (RDM) |

<u>**MEMORANDUM OPINION AND ORDER**</u>

     This diversity action concerns a life insurance policy covering Dr. Eugene C. Gadaire, which was assigned to a trust for the benefit of his wife, Elizabeth Gadaire.  Dr. Gadaire's close friend, Dr. Jeremy D. Orchin, served as trustee.  *See Orchin v. Great-W. Life & Annuity Ins. Co.*, 133 F. Supp. 3d 138, 140–41 (D.D.C. 2015).  After Dr. Orchin missed a semi-annual premium payment due July 1, 2009, the policy lapsed on August 1, 2009.  *Id.* at 143.  Dr. Orchin missed a second payment due January 1, 2010.  *Id.*  He did not realize that he had failed to make payments until after Dr. Gadaire died on January 15, 2010.  *Id.*  Mrs. Gadaire and Dr. Orchin previously sought relief against the issuer of the life insurance policy, Great-West Life & Annuity Insurance Company, but the Court granted summary judgment in favor of Great-West.  *Id.* at 141.  The remaining dispute is between Mrs. Gadaire and Dr. Orchin.

     Presently before the Court is Mrs. Gadaire's renewed motion for summary judgment against Dr. Orchin on her claims for negligence and breach of fiduciary duty.  *See* Dkt. 57.  Mrs. Gadaire contends that (1) Dr. Orchin violated the standard of care as a matter of law and (2) the defense of contributory negligence is inapplicable to claims that a trustee breached his duties to a beneficiary.  *See* Dkt. 57-1.  Dr. Orchin responds that Mrs. Gadaire cannot prevail because, under the terms of the trust, he was under no obligation to make payments if the trust contained

insufficient funds, and, at the time he failed to pay the premiums, the trust lacked sufficient funds.  *See* Dkt. 58 at 7–10.  He further contends that under the terms of the trust, he did not have a duty to notify Mrs. Gadaire that the trust lacked sufficient funds.  *Id.* at 11–14.  Finally, he contends that the trust includes an exculpatory clause precluding liability for nonpayment.  *Id.* at 8–9.

As explained below, the Court holds that genuine issues of material fact remain regarding whether Dr. Orchin met the applicable standard of care, and it rejects Mrs. Gadaire's contention that the defense of contributory negligence is unavailable as a matter of law.  The Court, accordingly, **DENIES** Mrs. Gadaire's renewed motion for summary judgment.  Dkt. 57.

## I.    BACKGROUND

The full history of the case is familiar to the parties and is explained in-depth in the Court's prior opinion.  *See Orchin*, 133 F. Supp. 3d 138.  For present purposes, the Court recounts only those portions of the background relevant to Mrs. Gadaire's renewed motion for summary judgment.

From 1993 through January 1, 2009, Dr. Orchin made every semi-annual insurance premium payment on behalf of the trust.  *Id.* at 142.  During this time, whenever Dr. Orchin received a premium statement, he would call Mrs. Gadaire and tell her.  *Id.*  She would then deposit money in the trust's checking account, and Dr. Orchin would in turn write a check from the trust to Great-West.  *Id.*  Dr. Orchin did not, however, receive a premium statement for the payment due July 1, 2009 or a subsequent lapse notice.  *Id.* at 143.  He had moved twice, most recently in April 2009, and, although he did submit change-of-address forms to the U.S Postal Service, he did not provide his new addresses to Great-West.  *Id.* at 142–43.

In October 2012, after Great-West refused to pay the proceeds of the insurance policy to the trust, Dr. Orchin brought suit against Great-West. Dkt. 1. In January 2013, Mrs. Gadaire brought suit against Dr. Orchin and Great-West, *see* No. 13-cv-55, Dkt. 1, and the cases were consolidated. Feb. 1, 2013 Min. Order. All three parties moved for summary judgment: Dr. Orchin sought summary judgment against Great-West, Dkt. 29; Mrs. Gadaire sought summary judgment on two of her three claims against Dr. Orchin, Dkt. 30; and Great-West sought summary judgment against both Dr. Orchin and Mrs. Gadaire, Dkt. 31. The Court granted Great-West's motion and denied Dr. Orchin's motion and, accordingly, dismissed Dr. Orchin and Mrs. Gadaire's claims against Great-West. *See Orchin*, 133 F. Supp. 3d at 141.

At the same time, however, the Court denied Mrs. Gadaire's motion for summary judgment on her negligence and breach of fiduciary duty claims against Dr. Orchin, holding that she had failed to demonstrate the absence of genuine issues of material fact for the jury. *Id.* at 153–54. As the Court explained, the record established that Dr. Orchin requested that the U.S. Postal Service forward his mail but did not update his address with Great-West and did not pay the insurance premiums in a timely manner. Beyond that, however, the record included no evidence of Dr. Orchin's care—or lack of care—in administering the trust. *Id.* Nor did the record establish—as a matter of law—the degree of "diligence" that was required of Dr. Orchin. *Id.*

In addition, Dr. Orchin had raised a number of potential defenses in his opposition to Mrs. Gadaire's motion. *Id.* He argued, for example, that Mrs. Gadaire was at least partially responsible for the lapse of the insurance because she

> failed to provide him with the money required for payments; did not notify him
> that she had not provided the necessary funds for two insurance periods; failed to
> "institute any sort of calendar system" to track her obligation to provide the funds;

and failed to notify Great-West that she was not receiving copies of premium
notices.

*Id.* (quoting Dkt. 37 at 11–12).  In reply, Mrs. Gadaire then asserted for the first time that the

defense of contributory negligence is inapplicable to a claim by a beneficiary of a trust.  *Id.*  The

Court declined to decide that issue because it was not raised in Mrs. Gadaire's opening brief and,

in any event, it was inadequately briefed.  *Id.*  And, because the Court had already concluded that

Mrs. Gadaire had not established her entitlement to summary judgment, the Court did not

address Dr. Orchin's further arguments that exculpatory clauses in the trust agreement precluded

Mrs. Gadaire's claims for negligence and for breach of fiduciary duty; that under the terms of the

trust, he lacked a duty to pay the premiums in the absence of sufficient funds in the trust account;

that Mrs. Gadaire's damages were not proximately caused by him; and that the defense of

assumption of risk barred Mrs. Gadaire's claim for negligence.  *See* Dkt. 37.

In order to provide Mrs. Gidaire with the opportunity to address these issues, the Court

denied her motion "without prejudice to Mrs. Gidaire filing a renewed motion addressing (1)

whether D.C. law permits a trustee to assert the defense of contributory negligence against the

trust's beneficiary, and (2) whether or in what circumstances a court can conclude as a matter of

law that a defendant's conduct violated the applicable standard of care."  *Orchin*, 133 F. Supp.

3d at 154–55.  Mrs. Gadaire's renewed motion for summary judgment is presently before the

Court.  Dkts. 57–59.

## II.     ANALYSIS

Mrs. Gadaire contends that Dr. Orchin violated the applicable standard of care as a matter

of law and that the defense of contributory negligence is unavailable to a trustee.  Dr. Orchin, in

turn, argues that, under the terms of the trust agreement, he did not have the duties alleged by

Mrs. Gadaire; that contributory negligence is indeed available as a defense, giving rise to a

question of fact for the jury; and that an exculpatory clause in the trust agreement bars Mrs.

Gadaire's claims.  The Court addresses each argument in turn.[1]

## A.    Standard of Care

Mrs. Gadaire first contends that she is entitled to summary judgment on her negligence

and breach of fiduciary duty claims because Dr. Orchin violated the standard of care as a matter

of D.C. law.[2]  In a negligence action, "[t]he plaintiff bears the burden of presenting evidence

'which establishes the applicable standard of care, demonstrates that this standard has been

violated, and develops a causal relationship between the violation and the harm complained of.'"

*Morrison v. MacNamara*, 407 A.2d 555, 560 (D.C. 1979).  "[A] claim for breach of fiduciary

duty under D.C. law" requires the plaintiff to show "that the defendant: (1) owed plaintiff a

fiduciary duty; (2) the defendant breached that duty; and (3) the breach proximately caused

injury to the plaintiff."  *3M Co. v. Boulter*, 842 F. Supp. 2d 85, 118–19 (D.D.C. 2012).

Viewing the law most favorably to Mrs. Gadaire, the standard of care for both claims is

one of reasonableness.[3]  With respect to her negligence claim, D.C. law requires that the plaintiff

---

[1]  Mrs. Gadaire contends that the Court should not reach many of the arguments raised by Dr. Orchin regarding the meaning of the trust agreement because the Court invited a renewed motion for summary judgment on only two specific issues.  *See* Dkt. 59 at 2 & n.1.  Many of Dr. Orchin's arguments regarding the terms of the agreement are, however, part and parcel of the question whether he violated a duty to her as a matter of law—the question at the heart of Mrs. Gadaire's motion.  The Court, accordingly, addresses Dr. Orchin's arguments regarding the meaning of the trust agreement to the extent that they are bound up with Mrs. Gadaire's argument that she is entitled to summary judgment.  These arguments were addressed fully by both parties during the oral argument on Mrs. Gadaire's motion.

[2]  The parties agree that this dispute is governed by the law of the District of Columbia.

[3]  As the Court explains in Section II.C below, if the trust agreement contains a valid, applicable exculpatory clause, Mrs. Gadaire might be required to prove that Dr. Orchin acted recklessly to prevail.  But, if so, Mrs. Gadaire's contention that she is entitled to summary judgment would face an even higher hurdle.

prove that the defendant failed to act with "reasonable care under the circumstances." *O'Neil v. Bergan*, 452 A.2d 337, 341 (D.C. 1982). And with respect to Mrs. Gidaire's fiduciary duty claim, D.C. law requires that the plaintiff show that the defendant failed to "administer the trust as a prudent person would," in light of "the purposes, terms, . . . and other circumstances of the trust," using "reasonable care, skill, and caution," D.C Code § 19-1308.04, and "tak[ing] reasonable steps to take control of and protect the trust property," D.C. Code § 19.1308.09.[4] Whether a defendant breached either of these duties is ordinarily a question of fact for the jury. *See Blake v. Securitas Sec. Servs., Inc.*, 962 F. Supp. 2d 141, 146 (D.D.C. 2013); *Paraskevaides v. Four Seasons Wash.*, 292 F.3d 886, 893 (D.C. Cir. 2002); *Armenian Genocide Museum & Mem'l, Inc. v. Cafesjian Family Found., Inc.*, 691 F. Supp. 2d 132, 144–47, 153 (D.D.C. 2010). The Court may resolve the dispute at summary judgment only if, drawing all reasonable inferences in the non-moving party's favor, the undisputed facts can yield only one conclusion. *Blake*, 962 F. Supp. 2d at 146.

Mrs. Gadaire contends that Dr. Orchin breached his duties to her by (1) failing to pay the insurance premiums; (2) failing to notify Great-West directly when he changed addresses, instead of relying solely on the U.S. Postal Service to forward his mail; (3) failing to inquire when he did not receive premium notices, despite knowing that premiums were due every six months; and (4) failing to notify her that the policy was at risk of lapse due to nonpayment. Dkt. 57-1 at 7–9. Dr. Orchin responds that under the terms of the trust agreement, he had no duty to

---

[4] Although Mrs. Gadaire sometimes refers to a breach of the fiduciary "duty of loyalty," there is no allegation that Dr. Orchin had divided loyalties or sought to benefit anyone other than the trust's sole beneficiary, Mrs. Gadaire. Rather, as Mrs. Gadaire's counsel conceded at oral argument, the crux of her claim is that Dr. Orchin was insufficiently careful in executing his duties as trustee.

pay the premiums if there were insufficient funds in the account (as was the case here) and that

he had no duty to notify Mrs. Gadaire of the risk of a lapse in coverage.  Dkt. 58 at 2–3.

    1.    *Duty to pay the premiums and related conduct*

Mrs. Gadaire first argues that by failing to pay the insurance premiums and failing to take

actions to ensure timely payment (items one through three above), Dr. Orchin acted

unreasonably as a matter of law.  But most of the cases upon which she relies are inapposite,

holding only that even though a plaintiff in a professional malpractice case must generally

"present expert testimony establishing the standard of care," expert testimony is unnecessary

where the professional's "lack of care and skill is so obvious that *the trier of fact* can find

negligence as a matter of common knowledge."  *O'Neil*, 452 A.2d at 341 (emphasis added); *see

also Carranza v. Fraas*, 763 F. Supp. 2d 113, 122 (D.D.C. 2011); *McNeil Pharm. v. Hawkins*,

686 A.2d 567, 582–83 (D.C. 1996); *District of Columbia v. Hampton*, 666 A.2d 30, 35 (D.C.

1995).  That holding addresses the relevant *evidentiary* requirements; it does not give the Court

authority to *remove from the jury* matters of "common knowledge," as Mrs. Gadaire contends.

Dkt. 57-1 at 4.  Quite the opposite, D.C. law is well-settled that determination of the "degree of

reasonable care and skill appropriate to the case" is a question of fact for the jury.  *O'Neil*, 452

A.2d at 341; *see also Carranza*, 763 F. Supp. 2d at 122; *McNeil Pharm.*, 686 A.2d at 582–83;

*Hampton*, 666 A.2d at 35.

In denying Mrs. Gadaire's original motion for summary judgment, the Court explained

that she had failed to identify undisputed facts in the record from which the Court could conclude

that Dr. Orchin acted unreasonably *as a matter of law*:

> [T]he record [said] little about the timing and circumstances of Orchin's moves,
> the care that he exercised as Trustee, whether it was reasonable for him to expect
> the insurance notices to make it to his new address, or whether it was reasonable
> for him to rely solely on the mail as a reminder to make payments.

*Orchin*, 133 F. Supp. 3d at 153–54.  Mrs. Gadaire's renewed motion sheds no further light on these factual questions.  *See* Dkts. 56–57.  Dr. Orchin, moreover, avers that he "cared for the Trust assets in the same manner as [he] cared for [his] own personal assets," relying on the U.S. Postal Service to forward his mail, rather than "personally notify[ing] . . . organizations that [his] address had changed."  Dkt. 58-7 at 2–3 (Orchin Decl. ¶ 4).  The parties disagree about whether that decision was a prudent or reasonable one in light of Dr. Orchin's obligations as trustee, and it is not for the Court to resolve that factual dispute on summary judgment.

Dr. Orchin goes further and argues that, under the terms of the trust agreement, he had *no* duty to pay the insurance premiums because the trust account lacked sufficient funds to pay the premiums.  *See* Dkt. 37 at 8–9; Dkt. 58 at 7–11.  Under this theory, it is Dr. Orchin—and not Mrs. Gadaire—who is entitled to summary judgment.  But even liberally construing Dr. Orchin's brief in opposition—which included a footnote requesting that the Court treat a portion of that brief as a cross-motion for summary judgment, Dkt. 58 at 7 n.4—the Court is unconvinced that Dr. Orchin is entitled to summary judgment.

The trust agreement provides that "[i]f at any time, the principal of the trust estate . . . , excluding the insurance policies, shall be insufficient to pay such [insurance] premiums and other charges, the Trustee shall be under no obligation to make such payments."  Dkt. 58-2 at 2. Dr. Orchin offers unrebutted evidence that the trust did not contain sufficient funds to pay the premium due July 1, 2009, Dkt. 58-4 at 3 (Orchin Decl. ¶¶ 6–7); Dkt. 59, and he contends that he was thus under no duty to pay the premium, Dkt. 58 at 8.  That conclusion, however, goes beyond the plain terms of the trust agreement.  To be sure, there are circumstances under which this provision of the trust agreement might relieve the trustee of a duty to pay premiums in the absence of available trust funds.  Thus, if Dr. Orchin had made a considered decision not to pay

the premium because there were insufficient funds in the trust account or for some other reason related to business judgment, this case might fall within the plain terms of the provision.  But here, the undisputed facts are that Dr. Orchin missed a payment entirely by inadvertence, and Mrs. Gadaire alleges that he failed to take reasonable steps even to keep track of whether and when a payment was due.  He did not fail to make payment because the trust account was underfunded; he did not make payment because he forgot to do so.

The trust agreement did not absolve Dr. Orchin of the duty to exercise reasonable care in keeping track of when payments were due.  It is, at most, silent on the matter.  *Cf.* Restatement (Third) of Trusts § 77 cmt. d (2007) ("Because the normal duty of prudence in matters of administration is default law, the terms of the trust may modify or relax its requirements . . . , especially—but not solely—as regards the element of caution.  Trust provisions fixing a standard of prudence lower than that otherwise required of trustees are strictly construed.").  It is inherent in the trust relationship, however, that the trustee must make at least some effort to remain apprised of the status of the trust's assets and to protect those assets.  The question here is simply whether Dr. Orchin's limited efforts to do so (*e.g.*, requesting that the U.S. Postal Service forward his mail) were reasonable under the circumstances, and, as explained above, that is a question that must be resolved by the jury.

Any doubt on this question, moreover, is put to rest by D.C. trust law, which provides that the terms of a trust agreement cannot displace "[t]he duty of a trustee to act in good faith and in accordance with the purposes of the trust."  D.C. Code § 19-1301.05(b)(2); *see also* Restatement (Third) of Trusts § 77 cmt. d ("[T]rust terms may not altogether dispense with the fundamental requirement that trustees not behave recklessly but act in good faith, with some suitable degree of care, and in a manner consistent with the terms and purposes of the trust and

the interests of the beneficiaries.").  Dr. Orchin's expansive reading of the trust agreement's

provision on "insufficient funds" would contravene this mandatory duty.  Under his reading, he

could have made *no* efforts to inform *anyone* of his whereabouts and could have washed his

hands of the administration of the trust altogether, so long as in the end he met with the "lucky"

circumstance that the trust account happened to contain insufficient funds to pay the premium.

The parties agree, however, that the entire purpose of the trust was to hold Dr. Gadaire's life

insurance policy for the benefit of Mrs. Gadaire.  Dr. Orchin had a duty to take reasonable steps

to further that purpose.

 2. *Duty to provide notice to Mrs. Gadaire*

Mrs. Gadaire further contends that she is entitled to summary judgment because Dr.

Orchin breached his duty to inform her that the trust account needed funds to pay the premiums

and that the premiums were past due.  Dkt. 57-1 at 9.  As noted above, D.C. law requires a

trustee to "take reasonable steps to take control of and protect the trust property."  D.C. Code

§ 19.1308.09.  And, more specifically, it imposes a duty on trustees to "keep the qualified

beneficiaries of the trust reasonably informed about the administration of the trust and of the

material facts necessary for them to protect their interests."  D.C. Code § 19-1308.13(a); *see also*

Restatement (Third) of Trusts § 82 cmt. d (explaining that duty to provide "material information

needed by beneficiaries for the protection of their interests" "impose[s] an affirmative

requirement" to provide information "if and as circumstances warrant over the course of

administration").

Dr. Orchin responds that, under the terms of the trust agreement, he had no duty to

inform Mrs. Gadaire that the trust lacked sufficient funds to pay the premium.  Dkt. 58 at 11–14.

As he explains, the agreement provides that "[i]f, at any time, the principal of the trust estate,

other than the insurances policies . . . and borrowing on said policies, shall be insufficient to pay

such premiums and other charges, the Trustee *may* notify the Grantor of the amount necessary to

pay such premiums and other charges." Dkt. 58-2 at 2 (emphasis added). The use of the

permissive word "may," according to Dr. Orchin, abrogates the default rule that beneficiaries

must be kept reasonably informed about material information required to protect their interests

and, more broadly, abrogates the trustee's duty to take reasonable steps to protect the trust

property. *See* Dkt. 58 at 12.

   The Court is unpersuaded. First, the trust agreement speaks to the trustee's duty to notify

the *grantor*—Dr. Gadaire—and says nothing about the duty to notify the *beneficiary*—Mrs.

Gadaire. It, accordingly, fails to modify the default rule of reasonable notice necessary for the

beneficiary to protect her interests. Second, a trustee's duty to inform the beneficiary of

information reasonably necessary to protect her interests flows, at least in part, from the

*mandatory* "duty of a trustee to act in good faith and in accordance with the purposes of the

trust." D.C. Code § 19-1301.05(b)(2); *see also* Restatement (Third) of Trusts § 82 cmt. a(2)

("[A]lthough subject to modification by trust provision, the duty to provide information to

certain beneficiaries . . . may not be dispensed with entirely or to a degree or for a time that

would unduly interfere with the underlying purposes or effectiveness of the information

requirements."). The terms of the trust agreement may not abrogate this fundamental duty.

Here, the undisputed purpose of the trust was to hold Dr. Gadaire's life insurance policy for the

benefit of Mrs. Gadaire. If the trust's terms eliminated the trustee's duty to inform Mrs. Gadaire

of the fact that the policy was about to lapse for nonpayment of premiums, as Dr. Orchin

contends, its core purpose would have been vitiated. The Court, accordingly, rejects Dr.

Orchin's contention that under the terms of the trust agreement, he owed *no* duty under any

circumstance to provide information to Mrs. Gadaire regarding the risk of lapse of the policy and steps she might take to avert that consequence.

The Court, however, is also unconvinced that Mrs. Gadaire has demonstrated that she is entitled to summary judgment on her claim that Dr. Orchin violated his duty to keep her informed of the status of the trust.  To be sure, the undisputed record shows that Dr. Orchin had for many years consistently informed her when the trust account required additional funds, enabling Mrs. Gadaire to make a deposit and allowing him to pay the premiums.  *See Orchin*, 133 F. Supp. 3d at 142.  But, for the same reason that the Court cannot decide as a matter of law that Dr. Orchin acted unreasonably in failing to keep himself apprised of when the premium was due, it also cannot decide as a matter of law that his failure to keep Mrs. Gadaire apprised of the need to replenish the trust account was unreasonable.  Dr. Orchin contends, moreover, that Mrs. Gadaire was contributorily at fault for failing to realize that the premium was due in July 2009 and that the account required more funds to make this payment, *id.* at 154, and, as explained below, the Court rejects Mrs. Gadaire's contention that the defense of contributory negligence is unavailable as a matter of law.

## B.      Contributory Negligence

"The District of Columbia is one of the few jurisdictions in which the claimant's contributory negligence can act as a complete defense to the defendant's liability for negligence."  *Jarrett v. Woodward Bros.*, 751 A.2d 972, 985 (D.C. 2000).  Like questions of negligence, the question whether a plaintiff was contributorily negligent—whether her "failure to use ordinary care proximately caused [her] injuries"—"ordinarily . . . must be decided by the trier of fact."  *Blake*, 962 F. Supp. 2d at 146 (quotation marks omitted).  Mrs. Gadaire has not argued in her renewed motion that, as a factual matter, the evidence is such that no reasonable

juror could find that her conduct was negligent. *Cf. Morrison*, 407 A.2d at 568. Rather, she contends that the defense is unavailable to a trustee as a matter of law. Accordingly, as Dr. Orchin argues, the question whether Mrs. Gadaire was contributorily negligent is "a matter for the jury unless [she] can show that D.C. law precludes the affirmative defense." Dkt. 58 at 14. The Court concludes that she cannot.

In her original motion for summary judgment, Mrs. Gadaire relied on cases from other jurisdictions stating, without elaboration, that defenses of contributory or comparative negligence are inapplicable to breach of fiduciary duty claims. *See* Dkt. 43 (citing *Conway v. Icahn & Co.*, 16 F.3d 504, 511 (2d Cir. 1994) ("A full award for breach of fiduciary duty could not be reduced for contributory negligence."); *Solutia Inc. v. FMC Corp.*, 456 F. Supp. 2d 429, 452 (S.D.N.Y. 2006) ("Given the conflicting precedent [regarding New York law], this Court follows the suggestion of the Second Circuit in *Conway*, and declines to recognize a comparative negligence defense in the context of a claim for breach of fiduciary duty."); *Rex v. Lincoln Tr. Co.*, No. 81-523, 1983 U.S. Dist. LEXIS 11145, *13 (D. Colo. Dec. 2, 1983) ("[C]ontributory negligence is not a defense to a breach of trust.")). *But see Bank Brussels Lambert v. Chase Manhattan Bank, N.A.,* No. 93-5298 , 1999 WL 710778, at *1 (S.D.N.Y. Sept. 10, 1999) ("This Court concludes, albeit *dubitante*, that the New York Court of Appeals would find that [a comparative negligence defense] is available . . . as to plaintiffs' claims of intentional tort, i.e., . . . breach of fiduciary duty); *Coty v. Steigerwald*, 262 A.D.2d 946, 946 (N.Y. App. Div. 1999) ("[W]e agree with defendants that comparative fault principles may be applied to a cause of action for breach of fiduciary duty . . . ."). She did not identify—and, to date, has not identified—any case holding that the defense of contributory negligence is unavailable to a trustee as a matter of D.C. law, and the Court's own research has also failed to identify any such precedent.

In her renewed motion, Mrs. Gadaire relies on cases holding that the defense of contributory negligence is unavailable under D.C. law where the defendant has violated a statutory duty supporting a claim of "negligence *per se*."  *See, e.g.*, *Jarrett*, 751 A.2d at 978, 985; *Blake*, 962 F. Supp. 2d at 150.  To establish such a *per se* duty, a "[p]laintiff must (1) identify a particular law or regulation designed to promote safety, (2) show that the plaintiff is a member of the class to be protected by the statute, and (3) show that the statute imposes specific duties of care and protection on the defendant."  *Blake*, 962 F. Supp. 2d at 150; *see also Scoggins v. Jude*, 419 A.2d 999, 1005 (D.C. 1980) (holding that "contributory negligence . . . will be unavailable as a defense if the effect of a statute 'is to place the entire responsibility for such harm as has occurred upon the defendant'" and if the statute "imposes a duty higher than the common law duty of reasonable care").

As an initial matter, the Court rejects Dr. Orchin's contention that Mrs. Gadaire cannot assert negligence *per se* because "[she] has not asserted a statutory or regulatory cause of action."  Dkt. 58 at 15.  As the D.C. Court of Appeals has explained, the question whether a statute creates an express or implied cause of action is "distinct" from the question whether the standard of care reflected in a statute should be incorporated into a common law claim for negligence.  *See Rong Yao Zhou v. Jennifer Mall Rest., Inc.*, 534 A.2d 1268, 1273 (D.C. 1987). The fact that Mrs. Gadaire has not alleged a statutory claim therefore has no bearing on whether she can claim that Dr. Orchin was negligent *per se*.

Mrs. Gadaire's claim of negligence *per se*, however, fails on other grounds.  In support of her contention that Dr. Orchin was negligent *per se*—that is, that his negligence is established as a matter of law based on his violation of a statute—Mrs. Gadaire relies on the provisions of the D.C. Trust Act requiring trustees to "take reasonable steps to . . . protect the trust property" and

14

to administer the trust prudently, "exercis[ing] reasonable care, skill, and caution."  Dkt. 57-1 at

4–5 (citing D.C. Code §§ 19-1308.09, 19-1308.04).  But these are not the kind of "specific duties

of care and protection" that give rise to a claim of negligence *per se*.  *Blake*, 962 F. Supp. 2d at

150.  "A statute or regulation offered to establish a standard for negligence *per se* purposes must

not merely repeat the common law duty of reasonable care, but must set forth 'specific

guidelines to govern behavior.'"  *McNeil Pharm.*, 686 A.2d at 579; *see also Scoggins*, 419 A.2d

at 1005.  The statutory provisions upon which Mrs. Gadaire relies lack this specificity, but

instead parallel the general—and inexact—common law requirements of "reasonableness" and

"due care."  The doctrine of negligence *per se*, accordingly, does not render unavailable the

defense of contributory negligence.[5]

Nor is the Court convinced that D.C. law more generally forecloses application of a

contributory-negligence defense in cases alleging a breach of fiduciary duty or the negligent

administration of a trust.  To be sure, there is some intuitive appeal to Mrs. Gadaire's arguments

that permitting a trustee to assert a contributory-negligence defense would belie the purpose of a

trustee-beneficiary relationship and that the result could prove unduly harsh, given that

contributory defense is a complete bar to recovery under D.C. law.  *See Jarrett*, 751 A.2d at 985;

Dkt. 57-1 at 5–6.  But this Court, sitting in diversity, must "achieve the same outcome [it]

believe[s] would result if the District of Columbia Court of Appeals considered [the] case."

*Novak v. Capital Mgmt. & Dev. Corp.*, 452 F.3d 902, 907 (D.C. Cir. 2006); *see also Workman v.

United Methodist Comm. on Relief of Gen. Bd. of Glob. Ministries of United Methodist Church*,

---

[5]  The Court, accordingly, need not reach Dr. Orchin's additional argument that the statutes cited by Mrs. Gadaire cannot support claims of negligence *per se* because they are not intended to promote public safety.  *See* Dkt. 58 at 16 –20.  *Cf. McCracken v. Walls-Kaufman*, 717 A.2d 346, 354 (D.C. 1998) (declining to "pass on the issue of whether . . . statute was adopted in order to promote public safety on the limited record before us").

320 F.3d 259, 262 (D.C. Cir. 2003).  The question, then, is whether existing precedent—even if

not directly on point—signals how the D.C. Court of Appeals would likely resolve the issue.

Although the relevant evidence is scant, the Court concludes that the D.C. Court of Appeals

would likely permit the defense.

　　　In the closest analogue the Court has been able to find, the D.C. Court of Appeals has

held that the defense of contributory negligence is not categorically unavailable in cases alleging

professional malpractice.  *See Morrison*, 407 A.2d at 567–68 (medical malpractice);[6] *see also*

*Lans v. Adduci Mastriani & Schaumberg L.L.P.*, 786 F. Supp. 2d 240, 311 (D.D.C. 2011)

("[T]he District of Columbia recognizes contributory negligence as a defense to negligence

claims, including legal malpractice claims.").  *Cf. Berlin v. Maryland Cas. Co.*, 60 Pa. D. &

C.4th 457, 463 (Ct. Com. Pl. 2002) ("Mr. Berlin's breach of fiduciary duty claim sounds in tort,

professes purely economic loss, and strikes me as quite similar to a claim for legal or other

professional malpractice.  With this in mind, . . . [the defense of contributory negligence] would

apply here.").  In reaching this conclusion, the D.C. Court of Appeals explained that, "[a]lthough

the defense . . . has rarely been sustained in actions involving professional negligence [because]

. . . [of] the disparity in knowledge between professionals and their clientele," the determination

"whether or not a plaintiff [was contributorily negligent] is a question of fact . . . to be

determined by the jury under proper instruction from the court . . . [unless] there is no evidence

from which a reasonable juror could find that the plaintiff' was contributorily negligent.

*Morrison*, 407 A.2d at 567–68.  The same reasoning applies here.  Although there are often

"disparit[ies] in knowledge," experience, and the allocation of responsibility between trustees

---

[6]   Although the D.C. Court of Appeals discussed the issue with respect to the defense of
assumption of risk, it stated that "[t]hese same principles are equally valid with respect to the
defense of contributory negligence in medical malpractice."  *Morrison*, 407 A.2d at 568 n.11.

and beneficiaries, those asymmetries go to whether the defense can be established *as a factual matter under the relevant circumstances* and do not bar the defense as a matter of law.  The Court, accordingly, concludes that the defense of contributory negligence is not precluded as a matter of law in a case alleging breach of a fiduciary duty.  This is not to say that the arguments that Mrs. Gadaire asserts—and, in particular, the nature of the trustee-beneficiary relationship— are irrelevant, but only that they are best considered "by the jury under proper instruction from the court."  *Id.* at 568.

Finally, the Court notes that other generally recognized exceptions to the availability of a contributory-negligence defense do not apply to this case.  Most notably, although the defense is generally inapplicable in intentional tort cases, Mrs. Gadaire does not argue that Dr. Orchin's alleged breach of fiduciary duty constituted an intentional tort.  *See* Restatement (Second) of Torts § 481 (1965) ("[C]ontributory negligence does not bar recovery against a defendant for a harm caused by conduct of the defendant which is wrongful because it is intended to cause harm . . . ."); *see also* Dan B. Dobbs, et al., The Law of Torts § 726 (2d ed.) ("Whether comparative fault should apply to fiduciary breach claims . . . is not so clear.  At least if the fiduciary breach is intentional, some courts would reject the comparative negligence reduction because the defense does not apply to intentional torts." (internal footnote omitted)).  There is no allegation, for example, that Dr. Orchin's conduct was "intended to cause harm to some legally protected interest of the plaintiff or a third person," or even that he pursued his own interests in lieu of protecting the trust.  Restatement (Second) of Torts § 481; *see also id.* § 8A (defining "intent"); *supra* note 4 (explaining that there is no allegation that Dr. Orchin breached the fiduciary duty of loyalty).  Rather, Mrs. Gadaire's theory is that Dr. Orchin failed to use sufficient care—that is, to act reasonably—in carrying out his duties as trustee.  "Insofar as the [fiduciary] duty requires due

17

diligence it is merely a particular application of a negligence standard.  To say that this claim should not be subject to a [contributory negligence] instruction would be to elevate form over substance."  *Shields v. Cape Fox Corp.*, 42 P.3d 1083, 1090 (Alaska 2002).  The Court, accordingly, rejects Mrs. Gadaire's argument that, as a matter of D.C. law, Dr. Orchin cannot assert the defense of contributory negligence.

## C.   Exculpatory Clause

Finally, in his opposition to Mrs. Gadaire's renewed motion, Dr. Orchin reprises his argument that the trust agreement contains an exculpatory clause barring Mrs. Gadaire's claims.  *See* Dkt. 58 at 9, 11.  The agreement states that "[i]f at any time, the principal of the trust estate, . . . excluding the insurance policies, shall be insufficient to pay such premiums and other charges, the Trustee shall be under no obligation to make such payments and *shall not be liable to any extent whatsoever for such nonpayment*."  Dkt. 58-2 at 2 (emphasis added).[7]  As explained above, the first half of this provision does not abrogate Dr. Orchin's duty to exercise reasonable care in administering the trust and in protecting the trust property.  *See supra* p. 9–10. Dr. Orchin contends, however, that the second half, with its use of the expansive phrase "any

---

[7]   Dr. Orchin also asserts that the following clause of the agreement is exculpatory:

> The Trustee shall not be held liable for any action taken or not taken or for any loss of depreciation in the value of any property in the trust estate, whether due to an error of judgment or otherwise, where such Trustee has exercised good faith and ordinary diligence in the exercise of his duties.

Dkt. 37 at 6 (quoting Dkt. 58-2 at 9); *see also* Dkt. 58 & n.11.  The Court does not, however, read this clause as exculpatory.  Rather, it simply states the standard of care and recites something akin to the business-judgment rule.  *Cf. Business-judgment rule*, Black's Law Dictionary (10th ed. 2014) ("The rule shields directors and officers from liability for unprofitable or harmful corporate transactions if the transactions were made in good faith, with due care, and within the directors' or officers' authority.").  At oral argument, moreover, the parties agreed that "ordinary diligence" requires the same level of care as "negligence."

extent whatsoever," goes further—exculpating him from liability for violating "any duty Dr.

Orchin otherwise may have had to make the Insurance Policy payment."  Dkt. 58 at 11.

The Court need not address the meaning and scope of this clause at this juncture.  D.C.

Code § 19-1310.08(a)(1) provides that an exculpatory clause in a trust agreement is

unenforceable to the extent that it "[r]elieves the trustee of liability for breach of trust committed

in bad faith or with reckless indifference to the purposes of the trust or the interests of the

beneficiaries."  *See also* D.C. Code § 19-1301.05(b)(1) (providing that terms of a trust cannot

prevail over requirements of § 19-1310.08).  Thus, even if the exculpatory clause applies, Dr.

Orchin cannot avoid liability to the extent that his conduct was reckless.  And, for the reasons the

Court explained at oral argument, the present record does not contain *undisputed* facts from

which it could conclude that Dr. Orchin was not reckless.  Dr. Orchin, like Mrs. Gadaire,

accordingly, is not entitled to summary judgment.  The Court will address whether the

exculpatory clause applies—rendering the standard of care one of recklessness rather than

negligence—at a later date after the parties have addressed how, if at all, the jury should be

instructed on this issue.

### III.    CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Mrs. Gadaire's renewed motion

for summary judgment, Dkt. 57, is **DENIED.**

**SO ORDERED.**


/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge


Date:  June 15, 2016